# Supreme Court of Texas

No. 25-0688

In the Interest of A.C.P., A.I.P., A.M.P., M.J-R.P. III,
and M.C.S., Children

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

Statement of JUSTICE YOUNG, with whom Justice Devine and Justice Sullivan join, respecting the denial of the petition for review.

Every case in which the government invokes the Texas judiciary's authority to terminate a parent–child relationship represents a tragedy for the family involved. This particular case also illustrates a serious problem for the law: what to do when the government apparently regards termination as so obviously justified that it fails to create a strong record of the basis for that result.

The trial court ordered termination of Mother's parental rights to her five children. The court of appeals reversed, with each justice on the panel writing to express markedly divergent reasoning. The justice writing the lead opinion concluded that the government had established at least one predicate ground for termination but had failed to develop a record that could satisfy the demanding showing required by our law

to conclude that termination was in the children's best interests. No. 04-24-00653-CV, 2025 WL 900127, at *6, *9 (Tex. App.—San Antonio Mar. 25, 2025) (Meza, J.).  A concurring justice would have held that the record was too deficient to establish even one predicate ground and would thus have stopped there.  719 S.W.3d 645, 645 (Tex. App.—San Antonio 2025) (Brissette, J., concurring in the judgment).*  A dissenting justice would have affirmed termination, asserting that the record provided sufficient factual inferences to justify the trial court's findings of both a predicate ground *and* best interests by clear and convincing evidence. *Id.* at 647 (McCray, J., dissenting in part).  The en banc court of appeals then divided 3–3 with one justice not sitting.  Another justice (joined by two others, including the original dissenter) wrote a detailed opinion explaining why en banc review was warranted and why the panel's decision was, in her view, erroneous.  719 S.W.3d 679, 683–90 (Tex. App.—San Antonio 2025) (Rios, J., dissenting from denial of reconsideration en banc).

The tie vote required denial of reconsideration en banc.  The judgment of termination was thus reversed, but the court of appeals upheld the designation of the Department of Family and Protective Services as the children's managing conservator.  2025 WL 900127, at *12.  That is where the case now stands.  The children remain protected but not legally cut off from any relationship with their mother.  Not ideal, but perhaps adequate under the circumstances.  Mother will have the opportunity to prove in future hearings that she should be restored as managing conservator.  If she can make that high showing, then it will turn out to have been

---

* For whatever reason, the lead opinion is unpublished while the concurring and dissenting panel opinions and the opinion dissenting from the denial of reconsideration en banc are published.

2

fortunate that the termination was reversed. If she never can, the status quo currently prevents the children's adoption (should that opportunity arise), but it at least ensures their protection.

The Court reasonably denies the department's petition for review. The splintered opinions from the court of appeals mean that this case is unlikely to be one that can serve as precedent in others; the 3–3 vote of the en banc court signals that the court of appeals itself will be on the lookout for opportunities to clarify the law when it has a full complement of justices. But perhaps most important of all, the result in this case ought to provide the State with the incentive to ensure that no court ever again sees a case like this one. If the justices who supported reversal of termination are correct that the record was needlessly deficient even though the department could easily have demonstrated the need for termination, then the solution is also easy: just include enough of that readily available evidence in the record. The department does that in *hard* cases; it should be simple to do so when it regards a case as a slam dunk.

That point is the message I draw from Justice Brissette's concurring opinion. I express no view of how the court of appeals should have decided this case—of whether the record was just adequate enough (as Justice McCray thought) or sufficient to uphold a predicate-ground finding but not the best-interest finding (as Justice Meza thought) or insufficient to uphold even a predicate-ground finding (as Justice Brissette thought). But I readily agree with Justice Brissette that the State must turn sharp corners when it comes to exercising the fearsome governmental power of taking children away from their parents. I say that with full recognition of the difficulties faced in this fraught area of law and with great

3

appreciation for the men and women who labor in these harrowing cases.

*   *   *

"[T]ermination is always the last resort," *D.V. v. Dep't Fam. & Protective Servs.*, 722 S.W.3d 854, 861 (Tex. 2025), but one that becomes necessary when, for example, a parent has proven wholly incapable of discharging the most elementary obligations of parenthood, such as providing basic safety, shelter, and nourishment. It is depressing to contemplate how many of our fellow citizens fail to meet that quite low bar and thus have forfeited one of the most elevated titles available to anyone: "Mother" or "Father." But a court can reach that distressing conclusion only with *proof*—and proof that is clear and convincing.

This requirement is easy to say but sometimes hard to apply. The justices of the court of appeals struggled with this case, ultimately finding themselves intractably divided. All of them appear to agree that, at least based on what was alleged and what may have been established at an early stage of the case, Mother fell so woefully short that it was entirely proper for the department to *pursue* parental termination. The family apparently lived in a building described as an abandoned barbecue restaurant that provided little protection. Two of the children were bitten by snakes (one of those bites, though, might have been from a wild rabbit); the elder of those two children has suffered permanent disfigurement from her injury. One child apparently became involved with drugs and illegal behavior, was stabbed in the abdomen during an altercation, and by age 15 was on probation with criminal charges pending. There had been allegations of sexual abuse against at least one child by the father of a different child. Mother herself had been imprisoned multiple times.

4

The opinions of the court-of-appeals justices detail these and many other similar points. The problem is that the *actual record at trial* is remarkably sparse about them. That deficiency is serious because the right of fit parents "to guide and direct their children's upbringing, and simply to be with their children, is unique among all other claims in our civil legal system." *D.V.*, 722 S.W.3d at 858. That is why we strictly scrutinize proceedings in which the State seeks the termination of parental rights. *See id.*; *see also Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Appellate courts participate in that scrutiny by ensuring, among other things, that the record supports each termination order. When the government inadequately shows its work in the trial court, it is difficult for an appellate court to know whether the termination was legally justified.

Take this case, for example, in which the court of appeals was fractured largely because of the state of the record. The entire transcript of the (alas) video-conferenced trial amounts to 70 pages. Within those 70 pages, the court dealt not only with Mother's case as to five children, but also the cases of the four different fathers whose parental rights were in jeopardy. And the exhibits volume includes little more than service plans and matters related to paternity—no police reports, no criminal convictions, no photographs, and no medical records. It is therefore not surprising to me that Justice Meza was underwhelmed by the department's evidence that termination was in the children's best interests. In her view, "while there was clear and convincing evidence of endangerment *pre*-removal, the record contains paltry evidence of *post*-removal facts." 2025 WL 900127, at *9. Whenever the department contemplates "the 'death penalty' of civil cases," *In re R.J.G.*, 681 S.W.3d 370, 381 (Tex. 2023)

5

(quoting *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021)), it should proceed only on the basis of a solid record that meticulously documents the grounds for termination, the children's interests, and the department's efforts to preserve the family.

If clear and convincing evidence supporting termination existed but was simply not presented, the consequences are more than troubling. Justice Brissette's views as to this point warrant careful consideration, and I quote her opinion at some length:

> The danger presented by this case is not that the Department sought to terminate on flimsy facts. The danger is that the State did not present the evidence it had—treating termination as a foregone conclusion.
>
> Our role, as a reviewing court, is to review the record to determine whether there was sufficient evidence to support the trial court's findings. It is not our duty to determine whether abuse or neglect occurred here. It is the State's duty to investigate and prove the grounds for termination, if present. It is the trial court's duty to hold the State to its burden of proof at trial.
>
> It did not do so.
>
> But, of even greater concern is that, had the Department presented at trial the facts set forth in its Affidavit for Emergency Removal, the decision in this case may very well have been different. It would be easy for us to ignore our standard of review and affirm based on information outside of the trial record. In fact, it would feel much better than the decision here, which leaves the children in foster care indefinitely unless Mother makes a significant and material change in her life and her ability to care for these children or voluntarily chooses to relinquish her rights. But affirming despite the State's failure to create the necessary record creates a very dangerous precedent—one that would only further enable a system that seems to have become numb to the import of what is at stake.

6

719 S.W.3d at 645–46 (citations omitted).

As Justice Brissette notes, the removal affidavit contained facts that the department did not later present at trial that may have strengthened the department's case, including Mother's extensive history with the department and the criminal-justice system, a live-in grandmother's drug use, and the fact that the abandoned barbeque restaurant where the family lived was basically just a shed. *See id.* at 646. If the facts in the removal affidavit *were true*, and if there had been no change in circumstances that displaced them, then the department should have presented them all at trial. Justice Brissette is likely correct in her diagnosis that "the Department found this was an open and shut case and handled it accordingly." *Id.* (Of course, if the facts in the affidavit are *not* true, then the department inexcusably separated the children from their mother on false pretenses.)

To be sure, and as noted above, the slim trial record does contain some disturbing allegations. The en banc dissent powerfully examines the details of the case; it reasonably (and accurately) asserts that it would be a serious error for a court's "concern with the brevity of the record" to *ipso facto* compel a reviewing court to conclude that the record did not support the judgment. 719 S.W.3d at 689. Page count and evidentiary sufficiency are not necessarily correlated at all.

Again, I decline to take any position and indeed have not confirmed in my own mind whether this particular case's judgment was correct or whether the dissent got it right. But even if one assumes that the record could justify the judgment of termination, the concerns that Justice Brissette expressed still strike me as entirely correct—that it is essential

7

for the department to create a record that is clean and clear enough to justify the harsh remedy of termination. Doing so is necessary to protect children. If a thorough record would still have failed to demonstrate a need for termination, then the rights of the children to their parents (and not just the other way around) would be threatened by judicial willingness to presume facts or conclusions that are not actually in evidence. And if the record would have been sufficient had it been complete, then a needlessly inadequate record threatens the safety of children by denying an appellate court the ability to verify that the State has cleared the heavy legal obstacles to termination. A child's right to escape hellish and abusive conditions cannot be sacrificed at the altar of parents' rights to avoid termination. That is why it is so important for the department to take every single case seriously and to build a complete record every time termination is on the table.

The irony is that this task should be *easier* in cases that the department regards as straightforward, which is why I hope that cases like this never again need to be resolved by a Texas court. The men and women who toil daily to protect children and families deserve our collective gratitude; my comments today should not be read as advocating unreasonable new burdens on those already laboring with insufficient resources. I am not confident that, day in and day out, I could do what they do, and I approach cases like this one from a position of humility. If anything, therefore, I hope that my comments encourage these men and women to recognize that the very importance of the task to which they devote themselves requires taking enough steps to *ensure* that the truth that they have discovered is well established on a record that others must

8

review. That effort, arduous as it may sometimes seem, is what will allow their hard work to result in accurate legal judgments that will protect the depressingly large number of Texas children who, through no fault of their own, lack parents who can or will protect them and who must therefore be protected by the law.

_____

Evan A. Young
Justice

**STATEMENT FILED:** June 5, 2026